# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| REEDHYCALOG UK, LTD. and REEDHYCALOG, LP § § § Plaintiffs, § § vs. § § DIAMOND INNOVATIONS INC. § § Defendant. § | CASE NO. 6:08-CV-325 PATENT CASE |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Diamond Innovations' Motion *in Limine* No. 5 (Docket No. 196). Having considered the parties' written submissions and oral arguments, the Court **DENIES** the motion.

## BACKGROUND

On August 15, 2008, ReedHycalog UK, Ltd. and ReedHycalog, LP (collectively, "ReedHycalog") brought suit against Diamond Innovations, Inc. ("Diamond Innovations") alleging infringement of several U.S. patents (the "Patents-in-Suit"). Generally, the patents describe partially-leached polycrystalline diamond ("PCD") elements with the thermal characteristics of fully-leached PCD elements and the impact strength of traditional PCD elements.

This is the third lawsuit involving the Patents-in-Suit. Before this case, ReedHycalog brought suit in May 2006 and in June 2007, but settled with the defendants in those cases before trial. In August 2008, ReedHycalog brought this case against Diamond Innovations.

Diamond Innovations moves the Court to prohibit any evidence regarding "any previous

litigation, settlement discussions, licenses, or agreements, or lack thereof, between ReedHycalog and any one else regarding the Patents-in-Suit." DIAMOND INNOVATIONS MOT. at 7. ReedHycalog has entered into fourteen licenses involving the Patents-in-Suit; there are no licenses at issue that do not directly involve the Patents-in-Suit. Of the fourteen licenses, five are the result of litigation and the remaining nine are not. On May 25, 2010, the Court held a pretrial hearing and heard oral arguments regarding Motion *in Limine* No. 5. The Court orally **DENIED** the motion with the condition that licenses would not be defined or identified as litigation licenses for the reasons now stated.

## APPLICABLE LAW

35 U.S.C. § 284 sets the floor for "damages adequate to compensate for [patent] infringement" at "a reasonable royalty for the use made of the invention by the infringer." The statute does not state a method for calculating a reasonable royalty, but courts generally look to the fifteen *Georgia-Pacific* factors for guidance. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). The first *Georgia-Pacific* factor considers "[t]he royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty." *Id.*

## ANALYSIS

Diamond Innovations asserts that settlement agreements, licenses, and similar transactions have no relevance to any claim or defense in this lawsuit and that any probative value these matters may arguably have is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or risk of misleading the jury. Further, Diamond Innovations also asserts that the agreements that were the result of actual or threatened litigation would also mislead the jury and result in undue delay and waste of time.

ReedHycalog argues that the licenses represent evidence of the market value of a license to the Patents-in-Suit and are used as a starting point by ReedHycalog's damages expert in determining reasonable royalty rates for a hypothetical license with Diamond Innovations. Further, ReedHycalog argues that the royalty rates of the five litigation licenses are consistent with the royalty rates of the nine non-litigation licenses because they are all licenses to the Patents-in-Suit and they all have the same type of running royalty structure.

Five Litigation Licenses

In determining whether any evidence should be admitted, the Court weighs its probative value against the danger of unfair prejudice, confusion of the issues, or misleading the jury. FED. R. EVID. 403. Historically, courts have excluded licenses made to settle litigation, finding their probative value highly questionable.

> [A] payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement. Many considerations other than the value of the improvements patented may induce the payment in such cases.

*Rude v. Westcott*, 130 U.S. 152, 164 (1889). Specifically, courts have been concerned that licenses made to settle actual or threatened litigation may be strongly influenced by a desire to avoid or end full litigation and thus not accurately reflect an established royalty. *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078–79 (Fed. Cir. 1983); *Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794, 801 (E.D. Tex. 2007) (J. Folsom) ("Evidence of . . . licenses made under the threat of litigation, offered for the purpose of 'perspective' or 'context,' would likely confuse the jury, and the jury would be unlikely to consider such evidence only as 'context' for a reasonable royalty.").

However, based on *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010), some parties are arguing, and some courts are finding, that settlement licences are admissible to prove a reasonable royalty. *See Datatreasury Corp. v. Wells Fargo & Co.*, Case No. 2:06cv72, 2010 WL 903259 (E.D. Tex. Mar. 4, 2010) (J. Folsom) (denying a motion *in limine* and admitting litigation-related licenses because concerns regarding the reliability of the licenses are better directed towards weight). *But see Fenner Invs., Ltd. v. Hewlett-Packard Co.*, Case No. 6:08cv273, 2010 WL 1727916 (E.D. Tex. Apr. 28, 2010) (J. Love) (granting-in-part a motion *in limine* precluding settlement agreements because their potential for prejudice and jury confusion substantially outweighed any probative value). In *ResQNet.com*, the Federal Circuit commented that "the most reliable license in th[e] record arose out of litigation." *ResQNet.com*, 594 F.3d at 872. The Federal Circuit's statement was part of its analysis regarding the first *Georgia-Pacific* factor, which requires considering past and present royalties for the *patent in suit* that prove or tend to prove an established royalty. *Id.* at 869. The admitted non-litigation licenses were not for the patent in suit and had no relation to the claimed invention. Only the settlement license was for the patent in suit. Thus, of the admitted licenses, only the litigation license was for the patent in suit, and therefore "the most reliable license in th[e] record" to show an established royalty. *Id.* at 872. The litigation license's admissibility—and whether its probative value outweighed its danger of prejudice—was not at issue before the Federal Circuit. Thus, the Federal Circuit's observation was not the adoption of a bright-line rule regarding the reliability of litigation licenses nor even a ruling on their admissibility. It was merely a reflection on the evidence before it.

After considering *ResQNet* and other case law, this Court determines that the admissibility of litigation licenses—like all evidence—must be assessed on a case-by-case basis, balancing the

potential for unfair prejudice and jury confusion against the potential to be a "reliable license." *See id.* at 872. Based on the circumstances surrounding a settlement, litigation licenses, particularly ones involving the patents-in-suit, may have probative value that outweighs unfair prejudice or jury confusion. However, the admission of litigation licenses may invite a mini-trial on the similarities and differences between the present case and the settled claims. *See Fenner Invs.*, 2010 WL 1727916, at *1. Thus, the Court assesses litigation licenses on a case-by-case basis in determining their admissibility.

The five litigation licenses in this case are consistent with the other nine non-litigation licenses as all fourteen licenses have similar running royalty structures. Further, while ReedHycalog intends to identify the licenses, the licensees, the rates of the licenses, the total royalties that have been received, and the royalties received per year, it will not identify the licenses as having resulted from litigation. Thus, the danger of prejudice to Diamond Innovations from the implication of validity and infringement by a third party willing to pay money to settle a lawsuit is eliminated. The probative value of the five licenses involving the Patents-in-Suit that resulted from litigation also outweighs the danger of potential prejudice or jury confusion of the issues. *See* FED. R. EVID. 403.

In *Soverain Software LLC v. Newegg Inc.*, this Court also denied defendant's motion *in limine* to preclude evidence relating to licenses or licensees of the patents-in-suit, where the licenses were entered into to settle litigation. Case No. 6:07cv511, Docket No. 358 (E.D. Tex. Apr. 20, 2010). The defendant argued that admitting the settlement licenses would create a false impression that they were entered into by willing licensees in an arms-length business transaction. The plaintiff countered that it would be prejudicial if it were not allowed to state the names of its well-known licensees because the defendant was going to offer into evidence license agreements with obscure,

5

nominal companies entered into under threat of litigation by plaintiff's predecessor. Based on the case-specific facts, the Court denied the motion *in limine* because the plaintiff was entitled to state the names of its licensees to rebut the defendant's argument that the plaintiff had only licensed to obscure, nominal companies. Further, neither the licenses themselves nor any evidence relating to the specific terms of the licenses were admitted.

Nine Non-Litigation Licenses

Although all fourteen licenses are to drill bit manufacturers and Diamond Innovations is a cutter manufacturer, the licenses may be used as a starting point for determining a reasonable royalty because the distinction of the type of licensee goes to the weight of the evidence and may be brought out on cross-examination. Further, the licenses on the Patents-in-Suit are evidence of ReedHycalog's alleged commercial success and are relevant to determining a reasonable royalty under the first *Georgia-Pacific* factor. *See ResQNet.com*, 594 F.3d at 869 ("[T]his factor considers only past and present licenses to the actual patent[s] and the actual claims in litigation."); *Georgia-Pacific*, 318 F. Supp. at 1120. Thus, the nine non-litigation licenses involving the Patents-in-Suit are admissible because their probative value outweighs the potential danger of prejudice or jury confusion. *See* FED. R. EVID. 403.

## CONCLUSION

Accordingly, Defendant Diamond Innovations' Motion *in Limine* No. 5 is **DENIED** with the condition that licenses would not be defined or identified as litigation licenses.

**So ORDERED and SIGNED this 2nd day of August, 2010.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**